IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-00029-FL

| | |
|---|---|
| **Rupert Futreal,** individually and as Administrator of the Estate of Elna Futreal,<br><br>Plaintiff,<br><br>v.<br><br>**Dustin Ringle,** et al.,<br><br>Defendants. | **Order** |

Plaintiff Rupert Futreal seeks an order compelling Enterprise Southeast, LLC ("Enterprise")[1] to provide responsive documents to several requests for production. Enterprise either objects to production (on various grounds) or has suggested to the court that the responsive documents do not exist. After reviewing the docket and the arguments of the parties, the court will grant Futreal's Motion to Compel Discovery in part and deny it in part.

## I.    Background

Shortly before 9:00 p.m. on an evening in mid-July 2017, a rented truck driven by Defendant Dustin Ringle hit the car in which Plaintiff Rupert Futreal and his late wife, Elna, were riding. Am. Compl. ¶¶ 24, 33. Ringle fled the scene of the accident but law enforcement officers later apprehended him and determined that he had been driving while intoxicated. *Id.* ¶¶ 34, 35, 36–41. The Futreals allegedly "suffered severe and painful injuries" along with emotional distress because of the accident. *Id.* ¶ 65.

---

[1] At first Futreal's motion involved EAN Holdings, LLC, and Enterprise Holdings, Inc., but the district court dismissed them from this action while this motion to compel was pending. D.E. 82. Thus this order will only apply to the discovery disputes involving Enterprise Southeast, LLC.

The accident involving the Futreals was not the first time that Ringle had issues with drinking and driving. Because of his many alcohol-related convictions, the State of Kansas designated him as a habitual violator in 2011. *Id.* ¶ 117–18. In June 2016, the Kansas Department of Motor Vehicles put an ignition interlock restriction on Ringle's authorization to drive, resulting in a prominent notation that read, "IGNITION INTERLOCK" on his driver's license. *Id.* ¶ 43–44. Although unclear from the Amended Complaint, it appears that the ignition interlock restriction required Ringle to install an ignition interlock device in any vehicle he owned or operated. *Id.* ¶ 44; *See* Kan. Stat. Ann. §§ 8–1014 & 8–1015 (West). An ignition interlock device "uses a breath analysis mechanism to prevent a person from operating a motor vehicle if such person has consumed an alcoholic beverage." *Id.* §8–1013(d). The restriction remained was in effect when Ringle crashed into the Futreals' car, but the truck he was driving lacked an ignition interlock device. *Id.* ¶ 47, 61.

Among the important issues in this case is how Ringle came to drive the truck without an ignition interlock device.

It appears that Ringle's employer, True's Custom Flooring Covering, Inc., rented the car from Enterprise. *Id.* ¶ 28. And although Ringle did not rent the truck directly from Enterprise, he was listed as an "additional authorized driver" on the rental agreement. *Id.* ¶ 29.

Futreal alleges that Enterprise had policies and procedures in place that prohibited drivers with ignition interlock restrictions from renting or operating its vehicles. *Id.* ¶ 45. Futreal claims that Enterprise negligently failed to follow its policy about drivers with ignition interlock restrictions when it listed Ringle as an authorized driver and that this negligence was the proximate cause of the accident. *Id.* ¶¶ 153–60.

After Futreal filed his lawsuit against Enterprise and others, the parties engaged in discovery. Futreal served his First Set of Requests for Production on Enterprise in April 2018,[2] and he received timely responses in early June 2018. Enterprise objected to each of Futreal's requests and produced no documents or a privilege log.

Over the next two months, the parties engaged in discussions over the appropriateness of Enterprise's responses. During this time, Enterprise served batches of responsive documents on Futreal, and by the end of July 2018 it stated that it had no additional responsive documents other than a statement it claimed was immune from disclosure under the work-product doctrine. Tr. at 24:25–25:4, D.E. 53; Def's Resp. to Mot. to Compel Ex. B at 5, D.E. 80–2. Futreal believed that Enterprise should have produced additional documents and, after giving the company another week to produce documents, asked the court to compel additional production of documents.[3]

## II.   Discussion

The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Parties may use any number of tools provided for in the Federal Rules to obtain discoverable information, including requests for production of documents. *See* Fed. R. Civ. P. 34. If the party that served requests for production believes that the responses it receives are inadequate, it "may move for an order compelling . . . production." *Id.* at 37(a)(3)(B). The party opposing the motion bears the burden of showing why it should not be granted. *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010) (citing cases).

---

[2] Futreal served his discovery requests in March 2018, but under Rule 26(d)(2) the requests were not considered served until the parties held their Rule 26(f) conference in April 2018. Mot. to Compel. at 1, D.E. 78.

[3] Since the filing of the Motion to Compel the parties have resolved several the disputed issues. This order addresses the issues that the parties have suggested remain outstanding.

### a. Good Faith Effort to Resolve Disputes

The court will begin by considering whether Futreal engaged in a good faith effort to resolve the discovery disputes before moving to compel. Enterprise claims that he did not mainly because Futreal's counsel repeatedly refused to narrow disputed Requests. Def.'s Resp. to Mot. to Compel at 4–6, D.E. 80. Futreal counters by arguing that he has repeatedly tried to discuss outstanding issues with Enterprise's counsel as the Rules require. Tr. at 12–9–21. After reviewing the parties' pre-filing activities, the court finds that Futreal engaged in a good-faith effort to resolve the discovery disputes before filing his motion.

The Federal Rules require that before moving to compel production, a party must confer (or attempt to confer) in good faith with the opposing party to resolve their dispute without court intervention. Fed. R. Civ. P. 37(a)(1). The moving party must certify in its motion to compel that it has satisfied this requirement. *Id.* & Local Civ. R. 7.1(c)(2).

Although Futreal's motion contains the required certification, Pl.'s Mot. to Compel at 6–7, D.E. 78, Enterprise claims that he did not make a good-faith effort to resolve the disputes between the parties before filing his motion. Rule 37(a)(1) requires that parties confer before the requesting party moves to compel. Some courts prefer that this conference take place either in person or telephonically and that parties request a discovery conference with the court before filing any motions to compel. *Merz N. Am., Inc.* v. *Cytophil, Inc.*, Case Nos. No. 5:15-CV-262-H-KS & 5:16-CV-745-H-KS, 2017 WL 4274856, at *2 (E.D.N.C. Sept. 26, 2017). Parties should "converse, confer, compare views, consult and deliberate, or in good faith attempt to do so." *Id.* (quoting *Pro Fit Mgmt., Inc.* v. *Lady of Am. Franchise Corp.*, 2011 WL 5825423, at *1 (D. Kan. Nov. 17, 2011)). If necessary, a requesting party should make "manifestly reasonable" accommodations with opposing counsel when trying to arrange a time to meet with opposing

counsel about discovery disputes. *Velasquez-Monterrosa* v. *Mi Casita Rests.*, No. 5:14–CV–448–BO, 2015 WL 1964400, at *4 (E.D.N.C. May 1, 2015). Essentially, the court will deny a movant's motion to compel if "the filing of the motion deprived the parties of a meaningful opportunity to resolve their dispute without court intervention." *Id.*

First, Futreal's and Enterprise's counsel met and conferred by telephone in June 2018. Mot. to Compel at 3. Then the parties tried to resolve their discovery disputes through a telephonic discovery conference with the court later that month. *Id.* at 5. After Enterprise produced more requested documents over the months of June and July, Enterprise's counsel and Futreal's counsel discussed perceived deficiencies in the production by email. *Id.* at 7. The repeated discussions and attempts to facilitate discussions over a period of several months gave the parties a meaningful opportunity to resolve their disputes before Futreal's counsel moved to compel. Thus, Futreal's counsel has met the requirement to confer in good faith before moving to compel discovery.

### b. Requests for Production 1 and 3

Request for Production 1 asks Enterprise to produce any statements from persons with knowledge of the events described in the Complaint, and Request for Production 3 asks for documents that relate to any investigation that has it conducted into those events. Mem. in Supp. Ex. A. at 10. Futreal contends that Enterprise must produce an investigatory interview with Glen Jacobson (the Enterprise employee who authorized Ringle to drive the car that hit the Futreals) in response to these requests. Enterprise claims that it does not have to produce the interview because it was prepared in anticipation of litigation and thus is immune from discovery under the work-product doctrine. Def's Resp., Ex. A, The company also claims it has preserved this objection by raising it in its General Objections to Requests for Production, tr. at 20–10–21–1, or, alternatively, by alerting Futreal's counsel to the existence of the withheld interview and the privilege claimed

during various discussions about their discovery disputes, tr. at 26:4–10. But Futreal counters that Enterprise has waived the protections of the work-product doctrine by not asserting it in response to specific requests for production and by not producing a privilege log until after Futreal filed his motion.

The Federal Rules of Civil Procedure place two requirements on a party that wishes to rely on the work-product doctrine to withhold otherwise discoverable documents. First, they must "expressly make the claim[.]" Fed. R. Civ. P. 26(b)(5)(A)(i). And then they must "describe the nature of the documents . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* 26(b)(5)(A)(ii). The court will address Enterprise's compliance with each of these provisions separately.

### i. Use of General Objections to Invoke the Work-Product Doctrine

A review of Enterprise's discovery responses shows that it did not explicitly raise the work-product doctrine in response to Requests for Production 1 and 3. Instead, Enterprise contends that the General Objections that it included at the beginning of its responses satisfy this requirement and preserve its work-product objection. Def.'s Resp. at 9–10. One of the General Objections explains that Enterprise objects to each request "to the extent that it calls for information protected by … attorney-client privilege, the work product doctrine, community of interest privilege, joint defense privilege and any other available and valid grounds for withholding information from disclosure." Mem. in Supp. Ex. A at 1. Enterprise claims that this General Objection is incorporated into each of its responses without an explanation about how or why it applies to Futreal's various Requests for Production. Enterprise's General Objections do not state whether it withheld any documents because of these objections.

The use of general objections finds scant support in the Federal Rules, which envision individualized, specific objections to requests for production of documents that inform the requesting party whether any documents have been withheld because of the objection. To begin with, no provision authorizes parties to use blanket general objections at the outset of their responses. Instead, when setting out how a party is to respond to requests for production, the Rule 34 explains that a party must provide a response "[f]or each item or category[.]" Fed. R. Civ. P. 34(b)(2)(B). When a party chooses to object to a request, the response must state the "grounds for objecting to the request[.]" *Id.* The Rules also require that a party must "must state whether any responsive materials are being withheld on the basis of" an objection. *Id.* 34(b)(2)(C). This procedure apprises the requesting party of the universe of responsive documents the producing party has and any objections to production.

And the argument against general objections is even stronger in the context of privilege objections. As noted above, a party must "expressly make the claim" that they are withholding documents based on a privilege or the work-product doctrine. Black's Law Dictionary explains that to do something expressly, it must be "[c]learly and unmistakably communicated; stated with directness and clarity." Express, *Black's Law Dictionary* (10th ed. 2014).

Given the language in the Federal Rules, it is unsurprising that federal courts often reject general objections to requests for discovery. *See FDIC* v. *Arrillaga-Torrens*, 212 F. Supp. 3d 312, 368 (D.P.R. 2016) (holding that '[g]eneral objections do not suffice" to claim privilege under Rule 26(b)(5)); *Jones* v. *Bank of Am., N.A.*, No. 3:14–cv–11531, 2015 WL 1808916, at *4 (S.D.W. Va. Apr. 21, 2015) (finding that privilege objections asserted in general objections were inappropriate); *D.L.* v. *D.C.*, 251 F.R.D. 38, 45 (D.D.C. 2008) (citing *U.S. ex rel. Pogue* v. *Diabetes Treatment*

*Ctrs of Am., Inc.*, 235 F.R.D. 521, 523 (D.D.C. 2006)) (finding that "blanket objections on the basis of privilege shall be rejected" when raised in general objections)

Enterprise relies on *Fischer* v. *Forrest*, Nos. 14 Civ. 1304 & 14 Civ. 1307, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017), to support its general objections. It claims that *Fischer* holds that "privilege objections are a proper basis for a general objection after the 2015 Federal Rule amendments." Def.'s Resp. at 7. But that is not what the court held in *Fischer*. The question before the court in *Fischer* was whether the responding party's use of 17 general objections complied with Rule 34. *Id.* at *2. The court began by noting that the use of general objections violates various provisions of the Federal Rules. *Id.* And then the court noted "[g]eneral objections should rarely be used … unless each such objection applies to each document request (e.g., objecting to produce privileged material)." *Id.* It is this language that Enterprise relies on to support its actions.

The relevant language in *Fischer* does not approve of the use of general objections in every instance, or even in every instance when a party believes privileged materials are at issue. Instead, the court in *Fischer* contended that general objections are appropriate if the objection applies to every response to every document request. Even if this court were to accept that position, Enterprise's general privilege objection would still be improper here because Enterprise conceded that its general privilege objection does not apply to each of Futreal's requests. Tr. at 21–23–22–6. Thus, *Fischer* does not support Enterprise's use of general objections to raise a work-product objection.

Enterprise also raises two other arguments in support of its approach to raising privilege objections in its General Objections.

Enterprise first claims that its approach was appropriate because Futreal's requests sought documents that did not yet exist, such as expert reports, and that it was trying to protect any privilege that might apply to documents that are created or discovered in the future. The initial problem with this argument is that if it can identify specific requests that may have called for the production of privileged documents in the future, as it did in its responsive brief, there was no need to use a general objection instead of an objection within the request itself.

Moreover, Enterprise's position on this point ignores the language of Rule 26(b)(5)(A), which explains that the appropriate time to raise a privilege issue is "[w]hen a party withholds information otherwise discoverable" based on a privilege or the work-product doctrine. The Advisory Committee Notes also explain that "[a] party must notify other parties if it is withholding materials" because of a privilege or work-product doctrine. Fed. R. Civ. P. 26 (1993 Advisory Committee Notes). The language of Rule 26 and the Advisory Committee Notes require that parties raise privilege or work-product objections when they withhold documents and do not provide for the preemptive assertion of privilege objections.

Enterprise's other argument is that the use of general objections was appropriate because it believed that Futreal's discovery requests went beyond the appropriate scope of discovery and that it could not raise specific objections until the parties resolved the question about the proper scope of discovery. But, again, Rule 34 and the Advisory Committee Notes do not support Enterprise's approach. The Federal Rules provide that if a request for production of documents is only objectionable in part, the responding party "must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). The Advisory Committee Notes provide an example that could have come directly from this dispute: "An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the

scope that is not overbroad." *Id.* (2015 Advisory Committee Notes). The appropriate approach in such a situation is to include "a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources." *Id.* Thus Enterprise should have specified in the response what it believed, in good faith, was the appropriate scope of discovery and responded accordingly.

Enterprise's discovery responses show the confusion that can result from using general objections to assert privilege instead of expressly claiming privilege in response to specific discovery requests. As noted above, Enterprise's general objections state that it is objecting to producing information that is "protected by any privilege or protection, including without limitation the attorney-client privilege, the work product doctrine, community of interest privilege, joint defense privilege and any other available and valid grounds for withholding information from disclosure." Mot. to Compel Ex. A, at 1. Enterprise then incorporates this General Objection into each of its discovery responses without specifying which privilege, if any, applies. Enterprise also states in each of its responses that it "will produce the following non-privileged documents responsive to this Request" without statnig whether any documents are being withheld based on a privilege. Thus, an individual reviewing Enterprise's discovery responses would not know from the responses themselves whether Enterprise had withheld any otherwise responsive documents and whether documents were withheld on one (or more) of the four privileges specifically identified in the General Objection or some other unspecified privilege.

Enterprise's failure to state explicitly when it is relying on a privilege to withhold otherwise responsive documents could result in Futreal being misled into believing that no documents were being withheld on privilege grounds. For example, in response to Requests 1 and 3, after its general objections and the prefatory language to its response, Enterprise indicates that it is producing

"[s]tatements taken from any person with knowledge of the incident described in the Complaint relating to the incident described in the Complaint." Given Enterprise's responses (and its apparent failure to describe the document it was withholding), there would be no reason for a reasonable person reviewing the responses to believe that Enterprise had withheld Jacobson's statement based on the work-product doctrine. Although Futreal's counsel pressed Enterprise on the issue, a less skeptical attorney may have simply moved on without finding out whether any documents had been kept from them.

The Federal Rules are designed to remove this kind of guessing game from the discovery process. Parties should not need to bring the court into the middle of the discovery process (or even threaten to do so) to find out if otherwise responsive documents have been withheld because of a privilege or work-product doctrine. Instead, attorneys should unambiguously state when they have withheld documents responsive to discovery requests based on a privilege or the work-product doctrine. Enterprise's responses failed to meet this standard and did not comply with the Federal Rules.

### ii. Delayed Notification of the Nature of the Withheld Documents

Futreal next challenges Enterprise's failure to produce a privilege log when it served its discovery responses. Enterprise claims that this issue is moot because it eventually served a privilege log (containing a single entry) after Futreal moved to compel. The Federal Rules require that a party withholding documents describe the nature of the withheld documents when they are withheld, so the belated production of a privilege log did not moot this issue. The court again finds that Enterprise failed to show that it complied with the Federal Rules' requirements for withholding documents on privilege grounds or the work-product doctrine.

As noted above, to properly invoke the work-product doctrine, parties need to "expressly make the claim" that documents are immune from discovery and need to "describe the nature of the documents, communications, or tangible things" they are withholding. Fed. R. Civ. P. 26(b)(5)(A). Parties generally satisfy the second requirement by producing a privilege log. *Am. Soc'y For Prevention of Cruelty to Animals* v. *Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006) ("Compliance with [Rule 26(b)(5)] is commonly achieved by providing the requesting party with a privilege log."); *Mezu* v. *Morgan State Univ.*, 269 F.R.D. 567, 577 (D. Md. 2010). But the Federal Rules do not require the production of a formal privilege log. All they require is that the withholding party "provide sufficient information to enable the other parties to evaluate the applicability other claimed privilege or protection." Fed. R. Civ. P. 26(b)(5) (1993 Advisory Committee Note). The nature of the information that the responding party must provide will depend on the nature of the privilege or protection that the responding party believes justifies withholding otherwise responsive documents. *Id.* Similarly, acceptable methods to convey the required information could vary depending on the circumstances of the case. *Id.*

The Federal Rules provide guidance about when a party must describe the documents it is withholding. Rule 26 requires that the party give notice when they withhold responsive documents. *See* Fed. R. Civ. P. 26(b)(5)(A); Fed. R. Civ. P. 26(b)(5)(A) (1993 Advisory Committee Notes) ("To withhold materials without such notice is contrary to the rule[.]").

Often this may require the responding party to give notice when a party serves its responses. But because the rules envision circumstances where parties make a production on an ongoing basis, it may be proper to produce a privilege log after the initial response or to supplement a privilege log after it has been served. Fed. R. Civ. P. 34 (2015 Advisory Committee Notes) ("The production must be completed either by the time for inspection specified in the request or by another

reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.").

In any case, the key event triggering the need to produce a privilege log is the decision to withhold otherwise responsive documents. If the initial deadline for production has passed and there is not a court order or agreement between the parties, the responding party should produce or supplement its privilege log promptly after the responding party has made the decision to withhold documents based on a privilege or the work-product doctrine.

Enterprise cannot justify the delay in producing the privilege log by complaining that Futreal's requests were overbroad. The Advisory Committee Notes explain that "[t]he obligation to provide pertinent information concerning withheld privileged materials applies only to items 'otherwise discoverable.'" Fed. R. Civ. P. 26 (1993 Advisory Committee Notes). So if "the responding party believes in good faith that" a request is overbroad, "it should make its objection to the breadth of the request[.]" *Id.* The responding party should then, in accordance with its view of the proper scope of discovery, "produce the unprivileged documents and describe those withheld under the claim of privilege." *Id.* The court can then resolve the dispute over the scope of discovery and any additional responsive documents "should then be either produced (if not privileged) or described (if claimed to be privileged)." *Id.*

Thus, if Enterprise believed in good faith that some of Futreal's discovery requests were overbroad or otherwise outside the scope of permissible discovery, it should have raised its concerns specifically within the objection. Then it should have assessed whether, given its good-faith belief about the appropriate scope of discovery, it needed to raise a privilege or work-product objection to prevent disclosure of otherwise responsive documents.

The materials before the court establish that Enterprise did not provide the required information promptly. The parties' submissions show that Enterprise provided no information about the document it withheld when it served its discovery responses in early June 2018. Enterprise claims that during the parties' meet and confer conference in mid-June 2018 it "identified the statement" being withheld as work product but provides no more information to the court about exactly what it told Futreal. Tr. at 24:25–25:3. Thus, the court lacks sufficient information to assess whether this conversation satisfied its obligations under the Rules. Not until early-August 2018, on the day after Futreal moved to Compel, did Enterprise serve a privilege log containing sufficient information to satisfy the Federal Rules.

The Jacobson statement was responsive to Futreal's discovery request and within the scope of permissible discovery. Enterprise's initial disclosures show that it was aware of the existence of this document or reasonably should have been. Because of these circumstances, Enterprise should have provided the information required by Rule 26(b)(5)(A)(ii) when it served its responses to Futreal's requests. The court thus finds that Enterprise did not provide the required information about the Jacobson statement in a timely manner.

### iii. Waiver of Work-Product Protection

Having found that Enterprise did not comply with the Federal Rules when it tried to withhold Jacobson's statement from Futreal, the court must decide what to do about it. Futreal encourages the court to find that Enterprise has waived the work-product doctrine and require production of the statement. Enterprise disagrees and claims that any violations cannot justify waiving the work-product doctrine.

The Advisory Committee notes explain that if a party fails to properly provide notice that it is withholding documents because of a privilege or the work-product doctrine, its actions "may

be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) (1993 Advisory Committee Notes).

Courts apply several different standards to determine whether a party has waived a privilege or the work-product doctrine. Sometimes the failure to object properly or produce a privilege log justifies a waiver with no further consideration. *Westchester Surplus Lines Ins. Co.* v. *Clancy & Theys Const. Co.*, No. 5:12-CV-636-BO, 2013 WL 6058203, at *5 (E.D.N.C. Nov. 15, 2013); *Progressive Se. Ins. Co.* v. *Arbormax Tree Serv., LLC*, No. 5:16-CV-662-BR, 2018 WL 4431320, at *7 (E.D.N.C. Sept. 17, 2018). Other times, courts will consider whether there has been "unjustified delay, inexcusable conduct[,] or bad faith in responding to discovery." *Herbalife Int'l, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, No. CIV.A. 5:05CV41, 2006 WL 2715164, at *4 (N.D.W. Va. Sept. 22, 2006). And yet other courts will decide "on a case-by-case basis after consideration of all the circumstances." *Smith* v. *James C. Hormel Sch. of Virginia Inst. of Autism*, No. 3:08CV00030, 2010 WL 3702528, at *4–7 (W.D. Va. Sept. 14, 2010).

In assessing whether Enterprise's actions justify waiving the work-product doctrine, the court will consider the totality of the circumstances to determine whether Enterprise's actions frustrated the purposes of the rules related to asserting privilege: informing the requesting party that documents have been withheld and providing the requesting party with sufficient information to assess the validity of the reason documents are being withheld. Fed. R. Civ. P. 26(b)(5) (1993 Advisory Committee Notes).

Enterprise's conduct frustrated both of the goals behind the Federal Rules governing the assertion of privilege. By asserting a general objection instead of explicitly raising the work-product objection in response to Futreal's requests, it obscured whether it was withholding any otherwise responsive documents. And by failing to provide sufficient information to Futreal to

evaluate its assertion of the work-product doctrine, Enterprise inhibited Futreal's ability to assess the validity of the objection. Because the single document at issue was undoubtedly responsive to Futreal's request, there was no justification for Enterprise's actions. Waiver of the work-product doctrine could be appropriate here.

Still, waiver of the work-product doctrine is a serious sanction that should be reserved for particularly egregious conduct. Although Enterprise frustrated Futreal's ability to assess whether the work-product doctrine applied to Jacobson's statement, it no doubt does. And the information in the statement was readily available from Jacobson in his deposition. Given the circumstances, the court believes that an award of attorney's fees is a more appropriate sanction than the waiver of the work-product doctrine. Thus, the court will order that Enterprise pay the reasonable fees and expenses Futreal incurred as part of this motion.

### c. Requests for Production 36, 37, 40, 45, and 55

The parties' dispute surrounding Requests for Production 36, 37, 40, 45, and 55 arises from the same issue: Enterprise has not explained whether it is withholding any documents that are responsive to these requests based on their objections. Request for Production 36 asks Enterprise to produce "all policies, protocols, requirements, and procedures applicable to the rental of any vehicle by a member of the public from 2012 to present." Mem. in Supp. Ex. A at 22–23. Request for Production 37 asks for policies and procedures "applicable to any request to be authorized as an additional driver." *Id.* at 23. Request 40 asks for relevant employee training records, and Futreal contends that Glen Jacobson's training record would be responsive to this Request. *Id.* at 25. Request 45 asks for records of any prior rentals to Ringle. *Id.* at 27. Request 55 asks for "studies, evaluations, or discussions" about rentals to customers with a history of impaired driving. *Id.* at 30–31.

Enterprise raised several objections to the scope of these requests, but did not reveal whether it was withholding any documents because of its objections. But in response to Futreal's motion, Enterprise asserted that it had produced all responsive, non-privileged documents. Def.'s Resp. at 10.

Rule 34 requires that when a party objects to a rule, it "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Enterprise's responses do not comply with this requirement, but its representations to the court indicate that it is not withholding any more responsive documents to these Requests. *See* Def.'s Resp. at 10; Def's Resp. Ex. A at 3. Given that there are no additional documents to produce, the court will order Enterprise to supplement its responses to comply with Rule 34(b)(2)(C).

### d. Requests for Production 56 and 57

Request for Production 56 asks Enterprise to produce pleadings from any lawsuits involving rentals to people with ignition interlock restrictions on their licenses, and Request 57 asks for pleadings from lawsuits involving renting vehicles to people who were later involved in an accident while impaired. Mem. in Supp. Ex. A at 31–32. Futreal wants all such pleadings from the last 18 years. Enterprise argues that these Requests are overbroad, irrelevant, unduly burdensome, and that most of these documents would be equally accessible to Futreal as they are to the defendants, as pleadings in federal lawsuits and many state lawsuits are public records. Mot. to Compel Ex. A at 31–32; Def.'s Resp. at 10. Futreal responds that these lawsuits are relevant because prior similar lawsuits against the same defendant would tend to show a pattern of behavior that would be relevant to his negligence, negligent entrustment, and punitive damages claims. Mem. in Supp. at 10.

In personal injury cases in particular, discovery related to other lawsuits involving the same party is relevant to issues such as "notice, knowledge, foreseeability, standard of care, and damages." *Deitz* v. *Pilot Travel Ctrs., LLC*, No. 3:14-CV-31091, 2015 WL 5031229, at *2 (S.D.W. Va. Aug. 25, 2015) (citing cases). Courts have recognized that requests for defendants' prior, similar litigation will always have some measure of relevance; but the "critical factor is whether the information, considering its relevancy and the nature of the case, outweighs the burdensomeness of the request." *Marker* v. *Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 124 (M.D.N.C. 1989); *see also, Travelers Indem. Co. of Conn.* v. *Coll. 60 Minute Cleaners, Inc.*, 2016 WL 10520837, at *3–4 (S.D. Ind. Mar. 29, 2016) (distinguishing the facts in *Marker* and finding that the facts merited compelling production of prior lawsuits). Courts may also limit the scope of the prior litigation that the objecting party needs to produce if the request is too broad because it seeks some lawsuits that are irrelevant or the time for the suits sought is too long. *See Dietz*, 2015 WL 5031229, at *2.

Enterprise claims that the requests are unduly burdensome because answering them would require the company to search the dockets of courts in all 50 states and all 94 federal district courts. *See* Mem. in Supp. Ex. A at 31–32. But this response ignores the fact that the federal rules require parties only to produce documents within their "possession, custody, or control[.]" Fed. R. Civ. P. 34. And it also ignores a much more readily accessible source of responsive documents: Enterprise's own records. It is reasonable to presume that Enterprise tracks when, how, and why it is sued and that it could search those records to determine whether it possesses responsive documents.

At the hearing on this matter, Enterprise claimed that it would be difficult to search its records for responsive documents because of how it keeps its records of prior lawsuits. But "the

burden that results from disorganized record-keeping does not excuse a party from producing relevant documents." *Brooks* v. *Macy's Inc.*, 10-CV-5304 (BSJ/HBP), 2011 WL 1793345, at *4 (S.D.N.Y. 2011). In any event, Enterprise has not made the necessary showing to support its claim. A party claiming that a discovery request is unduly burdensome must present an affidavit or other evidence that specifically describes the process of obtaining the responsive documents or information and the time and expense involved in responding to the request. *Cratty* v. *City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017); *Shaw* v. *Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301–02 (S.D. Cal. 2015); *L–3 Commc'ns Corp.* v. *Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015); *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 410–11 (N.D. Ohio 2011); *Convertino* v. *U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008). Enterprise has not presented these types of materials in support of its claim of undue burden.

If, after reviewing the revised scope of the request for production established by the court, Enterprise still believes that responding is unduly burdensome or not-proportional to the needs of the case, it will submit an affidavit or other evidence to the court that satisfies its burden on this point. Enterprise may also submit a supporting brief of no more than five pages in support of its position. These materials must be filed no later than seven days after the entry of this order. Futreal may file a responsive brief (of the same length) and supporting materials if he wishes to do so within seven days from the date Enterprise files its materials. The court will then promptly decide whether any additional production is required under Rule 26.

### e.  Requests for Production 59

Request 59 asks for documents "relating to the danger of impaired driving as it relates to rental vehicles and rental vehicle drivers." *Id.* at 32–33. Enterprise objects to this Request, contending it is vague, overbroad, and that responding to the request is not proportional to the

needs of the case. Mot. to Compel at 30–31, 32–33. Futreal responds that these Requests are appropriate and relevant because such documents might support his allegation in the Complaint that Enterprise failed to follow its own policies for authorizing drivers. Mem. in Sup. at 8–9.

The court finds that Enterprise has shown why the court should not compel it to respond to Request for Production 59. Enterprise has stated its objections to this Request with specificity and has explained why responding would not be proportional to the needs of this case. Mot. to Compel. Ex. A at 32–33. Thus, Futreal's motion to compel discovery for Request for Production 59 is denied.[4]

### f.  Requests for Production 61 and 62

Request for Production 61 asks for "copies of [Enterprise's] profit and loss statements from 2012 to the present," and Request 62 asks for "copies of [Enterprise's] corporate tax returns from 2012 to the present." Mem. in Supp. Ex. A at 33–34. Futreal admits that these documents are relevant only if his punitive damages claim survives summary judgment. Thus, the court orders that if Futreal's punitive damages claim survives summary judgment, Enterprise must provide the requested documents within 14 days after the court's ruling.

## III.   Conclusion

For all these reasons, the court grants in part and denies in part Futreal's Motion to Compel. D.E. 78. Unless otherwise specified above, Enterprise will supplement its discovery responses within 14 days of entry of this order. Except as outlined above, Futreal's motion to compel is denied. The parties shall submit any supplemental filings related to the burden of producing pleadings from suits filed against Enterprise on the timeline outlined above.

---

[4] The court notes that Futreal can gather much of the information that Request for Production 59 seeks in a Rule 30(b)(6) deposition of Enterprise. Futreal's counsel has suggested to the court that the parties are arranging this deposition. Tr. 45:7–15.

Within 14 days after entry of this order, the parties will meet and confer in an attempt to agree upon the expenses and attorneys' fees that Futreal should recover for his counsels' work on this motion. If the parties cannot agree, Futreal will file an accounting of its attorneys' fees and costs incurred in pursuing the motion to compel no later than 21 days after entry of this order. Futreal may also submit a supporting memorandum of no more than 10 pages with its request. Enterprise may file a response of no more than 10 pages within 14 days after Futreal files his memorandum.

Dated:  January 7, 2019

Robert T. Numbers, II
United States Magistrate Judge